**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DUVAL CHAMBERLAIN a/k/a D.CHAMBERZ and KENLEY CARMENATE a/k/a KASS THE PRODUCER,<br><br>Plaintiffs,<br><br>v.<br><br>DOLO ENTERTAINMENT, INC., ISIS NAIJA GASTON a/k/a ICE SPICE, EPHREM LOPEZ, JR. a/k/a RIOT a/k/a RIOTUSA, TENTHOUSAND PROJECTS, LLC a/k/a 10K PROJECTS, and UMG RECORDINGS, INC. d/b/a UNIVERSAL MUSIC GROUP,<br><br>Defendants. | Civil Action No. 1:24-cv-00349-NCM-PK<br><br>**AMENDED COMPLAINT** |

Plaintiffs Duval Chamberlain a/k/a D.Chamberz ("D.Chamberz") and Kenley Carmenate a/k/a Kass the Producer ("Kass," and together with D.Chamberz, "Plaintiffs"), by and through their undersigned counsel, as and for their Amended Complaint against Dolo Entertainment, Inc. ("Dolo"), Isis Naija Gaston a/k/a Ice Spice ("Ice Spice"), Ephrem Lopez, Jr. a/k/a Riot a/k/a RiotUSA ("Riot"), TenThousand Projects, LLC a/k/a 10K Projects ("10K"), and UMG Recordings, Inc. d/b/a Universal Music Group ("UMG," and together with Dolo, Ice Spice, Riot, and 10K, "Defendants"), hereby allege as follows:

## PRELIMINARY STATEMENT

1. Ice Spice is an up-and-coming American rap artist, whose popularity has grown exponentially over the past 20 months. She first gained widespread recognition after her song *Munch (Feelin' U)*, produced by Riot and released in August 2022, went viral on TikTok. Since then, Ice Spice has become world-famous, releasing multiple additional songs, a debut extended play album, and chart-topping collaborations, including *Princess Diana* (with Nicki Minaj),

*Karma* (with Taylor Swift), and *Barbie World* (with Nicki Minaj and Aqua).

2. The first song published by Ice Spice in 2023 was *In Ha Mood*, produced by Riot and officially released on January 6, 2023.

3. *In Ha Mood* peaked at number 58 on the Billboard's U.S. Top 100 chart; it also reached number 192 on Billboard's Global 200 chart, number 18 on Billboard's U.S. Hot R&B/Hip-Hop Songs chart, and number 8 on Billboard's U.S. Rhythmic chart.

4. By all accounts, *In Ha Mood* has been a commercial success, becoming certified as a "Gold" record (500,000 certified units/sales) by the Recording Industry Association of America, or RIAA, within four months of its release.

5. The official music video for *In Ha Mood* has garnered more than 48,312,740 views on YouTube in the 14 months since it was published on January 28, 2023, and Ice Spice performed the song during her appearance on Saturday Night Live on October 14, 2023.

6. However, by every method of analysis, *In Ha Mood* is a forgery—copied from Plaintiffs, who wrote, performed, recorded, and produced their original song, *In That Mood* (also referred to herein as, the "Work"), approximately 18 months before *In Ha Mood* made its debut.

7. To be sure, any proper comparative analysis of the beat, lyrics, hook, rhythmic structure, metrical placement, and narrative context will demonstrate that *In Ha Mood* was copied or principally derived from *In That Mood.* Without limitation, the similarities between the two songs include:

a. The same hip-hop rap genre and "drill" style.

b. Similar titles and hook/chorus lyrics.

i. Fragmented literal similarity given the *importance* of the phrases (title, frequency, and repeated use).

ii. The words "in that mood" repeated 25 times in the Work vs. "in ha mood"

repeated 22 times in *In Ha Mood*.

c. Similar *placement* of hooks/choruses and words therein.

i. Same entry of the hook/chorus at 0:13.

ii. Same repetition of "in that mood" and "in ha mood" three times in first segment of the hook/chorus.

iii. Same use of "mood" as the last word in each hook/chorus, acting as point of emphasis and rest.

d. Almost identical tempo of 142 beats per minute in the Work vs. 141 beats per minute in *In Ha Mood*.

e. Similar use of sixteenth, eighth, and quarter notes, including significant identical four-note rhythmic pattern (sixteenth-sixteenth-eighth-quarter) terminating in "mood" multiple times throughout each song.

8. For these reasons and others, as set forth in greater detail below, it is apparent that Defendants have unlawfully exploited *In That Mood*, and they have – with actual knowledge and fraudulent intent – infringed upon, and continue to infringe upon, Plaintiffs' copyright protection with respect to the Work, causing serious and significant injury to Plaintiffs.

**PARTIES**

9. D.Chamberz is an individual rapper and songwriter, who is domiciled and residing in Ozone Park, New York.

10. Kass is an individual sound engineer and producer, who is domiciled and residing in the Bronx, New York.

11. D.Chamberz and Kass became entitled to copyright protection with respect to the Work when the two first wrote, performed, recorded, and produced the Work on or around August 8, 2021, and first published it on or around January 28, 2022. They became owners of the statutory copyright for the Work when it was registered with the U.S. Copyright Office on May 18, 2023 (U.S. Copyright Office Registration No. PA 2-412-136).

12. Upon information and belief, Dolo is a corporation organized and existing under the laws of the State of New York with a principal place of business located in Lake Success, New York. Dolo is the primary copyright claimant for the sound recording of *In Ha Mood* registered with the U.S. Copyright Office on March 8, 2023 (U.S. Copyright Office Registration No. SR0000956912) ("Defendants' Copyright").

13. Upon information and belief, Ice Spice is an individual domiciled and residing in Weehawken, New Jersey, and is one of the authors and performers of the music, lyrics, and sound recording for *In Ha Mood*.

14. Upon information and belief, Riot is an individual domiciled and residing in Yonkers, New York, and is one of the authors and producers of the music, lyrics, and sound recording for *In Ha Mood*.

15. Upon information and belief, 10K is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business located in Los Angeles, California. 10K is publicly listed, together with Capitol Records / Capitol Music Group, as the record label for *In Ha Mood*.

16. Upon information and belief, UMG is a corporation organized and existing under the laws of the State of California with a principal place of business located in Santa Monica, California, which does business, in part, through its unincorporated divisions, subsidiaries, brand, and/or record labels, including, but not limited to, Capitol Records / Capitol Music Group. UMG is listed as an agent of Dolo in its capacity as "Copyright Claimant," and the "rights and permissions" contact, on Defendants' Copyright.

## JURISDICTION & VENUE

17. This Court has original federal question jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) based upon Plaintiffs' claims under the federal Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*. (the "Copyright Act").

18. This Court has supplemental jurisdiction over any and all state law claims alleged herein pursuant to 28 U.S.C. § 1367(a) in that such claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

19. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims asserted occurred in the Eastern District of New York. In addition to the harm caused to D.Chamberz, who resides in Queens County, New York, Dolo resides in Nassau County, New York, and Defendants have, *inter alia*, directed their activities and marketing of *In Ha Mood* to residents in this judicial district, enabled residents of this judicial district to purchase, download, and stream the infringing work, and otherwise engaged in purposeful and continuing business activities in this judicial district. Defendants are, at a minimum, constructively aware of their continuous and substantial commercial interactions with residents in this judicial district and, upon information and belief, have generated substantial revenue from the exploitation of *In Ha Mood* in this judicial district.

## FACTUAL BACKGROUND

### A. Plaintiffs' Creation and Publication of the Work

20. D.Chamberz is a Coney Island, Brooklyn native, who has become well-known in the rap and hip-hop community nationwide since releasing his first tracks and founding Warrior Mentality Music Group over a decade ago.

21. Together with Kass, D.Chamberz wrote, performed, recorded, and produced *In That Mood* prior to August 8, 2021, when he first used the song in an Instagram post.

22. The Work was then temporarily released as a single on all major digital music platforms for a two-week period from on or about January 28, 2022, until approximately February 11, 2022 (in connection with licensing for an advertising campaign that never ran).

23. Thereafter, on July 7, 2022, the Work was released and became permanently accessible to Defendants and the public on YouTube and all major digital music platforms as part of D.Chamberz's album, *Boom Bap 2 Drill Rap*.[1]

24. Since July 7, 2022, D.Chamberz and others have repeatedly marketed, made available, and otherwise used *In That Mood*, in whole or in part, on social media, online, and elsewhere.

## B. <u>Public Performances and Radio Airplay of the Work</u>

25. Between August 21, 2021, and December 21, 2022 (*i.e.*, for more than 16 months prior to the publication of *In Ha Mood*), D.Chamberz publicly performed *In That Mood* no less than 36 times, mostly at venues within the five boroughs of New York City, where Ice Spice, Riot, and their closest associates primarily reside.

26. The public performances of *In That Mood* prior to January 2023 (*i.e.*, the month *In Ha Mood* was first published) included, without limitation, the following:

a. 8/21/21 - Riverfront Park (West Virginia);
b. 9/12/21 - York College for Hot 97 Car Show (Queens, NY);
c. 09/18/21 - The Boogie Down Grind (Bronx, NY);
d. 9/28/21 - Dorsett (Brooklyn, NY);

---

[1] The YouTube version of *In That Mood* can be accessed here: https://youtu.be/gluHUnUJrYY. Without limitation, *In that Mood* was, at all relevant times, available for streaming and download at these web-based locations: Spotify (https://open.spotify.com/track/2iIHCgvVBuveHZVhVUiVsi); Apple Music (https://music.apple.com/sk/album/boom-bap-2-drill-rap/1633111209); Amazon Music (https://www.amazon.com/Credit-Debit-Dead-Presidents-Explicit/dp/B0B5VRMLF7); SoundCloud (https://soundcloud.com/dchamberz/tracks).

e. 10/11/21 - Roxy's (Queens, NY);
f. 11/15/21 - Now & Then (Brooklyn, NY);
g. 12/8/21 - Now & Then (Brooklyn, NY);
h. 12/17/21 - 2935 3rd Ave., Bronx, NY (Bronx, NY);
i. 12/20/21 - Now & Then (Brooklyn, NY);
j. 1/10/22 - Now & Then (Brooklyn, NY);
k. 2/8/22 - Now & Then (Brooklyn, NY);
l. 2/13/22 - Dorsett (Brooklyn, NY);
m. 2/24/22 - Quad Studios (Manhattan, NY);
n. 3/10/22 - Dorsett (Brooklyn, NY);
o. 4/12/22 - SOBs (Manhattan, NY);
p. 4/14/22 - Hudson Station (Manhattan, NY);
q. 4/16/22 - Alibaba Lounge (Wilkes-Barre, PA);
r. 5/12/22 - Cat Sports Pub (Manhattan, NY);
s. 5/26/22 - Cat Sports Pub (Manhattan, NY);
t. 7/2/22 - Chelsea Music Hall (Manhattan, NY);
u. 7/7/22) - Skorpios (Manhattan, NY);
v. 7/20/22 - Coney Island Art Walls (Brooklyn, NY);
w. 7/24/22 - King of Diamonds (Miami, FL);
x. 7/26/22 - Foxy's Club (Brooklyn, NY);
y. 8/9/22 - Foxy's Club (Brooklyn, NY);
z. 8/27/22 - Traffic Jam Music Festival (Brooklyn, NY);
aa. 8/28/22 - York College for Hot 97 Car Show (Queens, NY);
bb. 9/8/22 - Now & Then (Brooklyn, NY);
cc. 9/10/22 - SOBs (Manhattan, NY);
dd. 9/27/22 - Foxy's Club (Brooklyn, NY);
ee. 10/4/22 - Foxy's Club (Brooklyn, NY);
ff. 10/11/22 - Foxy's Club (Brooklyn, NY);
gg. 10/29/22 - Private Location (Harlem, NY);
hh. 11/1/22 - Now & Then (Brooklyn, NY);
ii. 11/14/22 - SOBs (Manhattan, NY); and
jj. 12/21/22 - Dorsett (Brooklyn, NY).

27. Upon information and belief, Ice Spice, Riot, and/or members of their creative teams were present for certain public performances of *In That Mood* during the relevant time period.

28. Between August 8, 2021, and December 31, 2022, *In That Mood* also received significant airplay on several prominent radio stations in and around the NY-NJ-CT tri-state area, including, without limitation, on the following stations, shows, and time slots:

a. Hot 97 // FM 97.1 - DJ Drewski (weekdays from 2 p.m. to 3 p.m. and Sunday nights at 11 p.m.);
b. Hot 97 // FM 97.1 - DJ Magic (Sundays from 7 p.m. to 8 p.m.);
c. Hot 97 // FM 97.1 - DJ Spazo (Fridays from 12 a.m. to 1 a.m. and Saturdays from 12 a.m. to 2 a.m.);
d. Power 105.1 // FM 105.1 - DJ Self (weekdays from 10 p.m. to 2 a.m.);
e. Power 105.1 // FM 105.1 - DJ Will (as scheduled); and
f. The Beat 105.5 Rochester // FM 105.5 - DJ Tygga Tya (weekdays from 7 p.m. to 12 a.m.).

29. Upon information and belief, Ice Spice, Riot, and/or members of their creative teams heard *In That Mood* on the radio during the relevant time period.

30. Without limitation: (i) in an Instagram video posted by Riot on December 31, 2021, it appears that Riot was listening to an Ice Spice song on Hot 97 (FM 97.1) on November 15, 2021, from 11:30-11:31 p.m. (https://www.instagram.com/p/CYJ5kjvuMZ_/); and (ii) a separate Instagram video posted by D.Chamberz on November 15, 2021, demonstrates that *In That Mood* was played on Hot 97 (FM 97.1) on the same date starting at 11:33 p.m. (https://www.instagram.com/reel/CWSN3xBgAqx/), making it a virtual certainty that Riot actually heard *In That Mood* more than a year before *In Ha Mood* was first created and published.

**C. Defendants' Access to the Work**

31. By virtue of the Instagram posts described above, establishing that Riot was listening to Hot 97 (FM 97.1) on November 15, 2021, less than two minutes before *In That Mood* aired on the same station, it appears more likely than not that Riot actually heard and knew about *In That Mood* prior to the creation and publication of *In Ha Mood*.

32. By virtue of the publication, live performances, and radio airplay of *In That Mood*, as described above, the Work was also widely disseminated long before the creation and publication of *In Ha Mood.*

33. By virtue of the publication, live performances, and radio airplay of *In That Mood*, as described above, Defendants had access to the Work prior to the creation and publication of *In Ha Mood*.

34. Furthermore, Plaintiffs are well-known in the rap and hip-hop community and share a substantial number of undeniable connections with Defendants.

35. For example, and without limitation, Riot follows DJ Drewski on Instagram, and, as evidenced by the Instagram videos described above, he has listened to DJ Drewski's radio show on Hot 97 during which *In That Mood* has been played.

36. Similarly, Riot's father, Ephrem Lopez a/k/a "DJ Enuff" (himself a well-known DJ and radio personality on Hot 97) ("DJ Enuff"), follows D.Chamberz on Instagram and has, from time to time, actively engaged with D.Chamberz's social media content.

37. Based on all of the facts and circumstances known to Plaintiffs, as described above, it is probable – or, at the very least, reasonable possible – that Defendants heard the Work and knew about the Work prior to the creation and publication of *In Ha Mood*.

**D. Defendants' Infringement**

38. It is beyond dispute that *In That Mood* was written, recorded, published, performed, and otherwise made widely available by Plaintiffs before Defendants created or published *In Ha Mood*. In point of fact, records of the U.S. Copyright Office confirm that *In Ha Mood* was not created until 2023 and was not published until January 6, 2023.

39. The similarities between *In That Mood* and *In Ha Mood*, as described herein, are so strikingly similar that they cannot be purely coincidental.

40. *In Ha Mood* is at least substantially similar to *In That Mood* in critical respects that are not just incidental, but rather go the core of each work.

41. Even if certain elements of *In That Mood* may be unprotectible standing alone, as a whole and based upon the combination and organization of any unprotectible elements, *In That Mood* is entitled to copyright protection and has been misappropriated by Defendants.

42. Non-expert listeners have independently pointed out that Defendants "stole" *In That Mood* in creating *In Ha Mood* as the two songs clearly employ numerous noticeably similar composition elements and lyrics, which result in a sound and feel that are very much alike.

43. Plaintiffs are – and, at all relevant times, have been – entitled to copyright protection with respect to the Work.

44. Defendants do not and never did hold any licensing rights with respect to the Work and never acquired any other rights in or to it.

45. Based on the Instagram videos described above, it appears that Riot actually heard and had knowledge of the Work as early as November 15, 2021 – *i.e.*, approximately 14 months before the creation and publication of *In Ha Mood.*

46. Defendants also had access to the Work by virtue of the publication, public performances, radio airplay, and other usage and distribution of the Work, as well as through the more personal connections of Riot, DJ Enuff, and others.

47. The similarities between *In Ha Mood* and the Work – including the key phrase used in the chorus and repeated in a substantially similar manner numerous times throughout both songs – are such that it is simply not reasonable to believe that *In Ha Mood* could have been created without having heard the Work first.

48. As noted above, and without limitation, *In Ha Mood* is similar to the Work in the following ways:

a. *In Ha Mood* employs the same hip-hop rap and "drill" style as the Work.

b. *In Ha Mood* has a title similar to the Work – *In That Mood* – and uses similar hook/chorus lyrics.

i. The words used in *In Ha Mood*, which are similar to those used in the Work, are not inconsequential, but, rather, critically important components of each song based on their usage in the title and hook/chorus, their frequency and repetition. In other words, they satisfy the fragmented literal similarity test.

ii. The phrase "in that mood" is repeated 25 times in the Work, and the phrase "in ha mood" is repeated 22 times in *In Ha Mood*.

c. The placement of the hooks/choruses and words therein in *In Ha Mood* is similar to the placement of the hooks/choruses and words therein in the Work, and the contour – shape or direction of the melody – is similar.

i. The hook/chorus in *In Ha Mood* enters at 13 seconds into the song – *i.e.*, the same time the hook/chorus enters in the Work.

ii. *In Ha Mood* uses repetition of the phrase "in ha mood" three times in first segment of the hook/chorus – *i.e.*, the same repetition uses for the phrase "in that mood" in the Work.

iii. *In Ha Mood* uses the word "mood" as the last word in the hook/chorus, acting as point of emphasis and rest – *i.e.*, the same as the word "mood" is used as the last work in the hook/chorus in the Work.

d. *In Ha Mood* uses an almost identical tempo (141 beats per minute) as the Work (142 beats per minute).

e. *In Ha Mood* has a similar rhythm as the Work, as both use sixteenth, eighth, and quarter notes, including a highly significant identical four-note rhythmic pattern (sixteenth-sixteenth-eighth-quarter) terminating in "mood" multiple times throughout each song.

49. Based on the foregoing, it is apparent that Defendants copied, interpolated, or otherwise used material, unique, and distinct portions of the Work, as previously published, in the creation of *In Ha Mood*, creating a derivative work, without license or other consent by Plaintiffs.

50. On or about July 10, 2023, Plaintiffs, through their counsel, notified Defendants of the infringement by letter addressed to Dolo, Capitol Records, Capitol Music Group, and UMG at the address provided for "Copyright Claimant" on Defendants' Copyright (and copying Ice Spice,

Riot, and 10K), and, in the same letter, demanded the following relief: (i) an accounting of all direct and indirect royalties, revenues, and/or other economic benefits generated by the creation and subsequent commercial exploitation of *In Ha Mood*; (ii) payment to Plaintiffs of no less than fifty percent (50%) of all direct and indirect royalties, revenues, and/or other economic benefits generated by the creation and subsequent commercial exploitation of *In Ha Mood* to date; (iii) an agreement to pay Plaintiffs no less than fifty percent (50%) of all direct and indirect royalties, revenues, and/or other economic benefits generated by the creation and subsequent commercial exploitation of *In Ha Mood* in the future; and (iv) formal recognition and acknowledgement of Plaintiffs as co-authors of *In Ha Mood* (the "Pre-Suit Notice and Demand").

51. Although attorneys for Ice Spice, Riot, "and their related entities" responded to the Pre-Suit Notice and Demand, Defendants have failed to provide the relief requested in the Pre-Suit Notice and Demand and have continued to commercially exploit *In Ha Mood* without permission by using the melodic, harmonic, rhythmic, and lyrical compositions copied from the Work.

52. Despite the Pre-Suit Notice and Demand, each of Defendants have continued to infringe Plaintiffs' copyrighted Work.

53. The infringement by Defendants is willful, as evidenced by their continuing infringement of the Work after the Pre-Suit Notice and Demand was provided to them.

54. Defendants have knowingly and intentionally infringed upon Plaintiffs' rights.

55. Defendants' collective knowledge and intent are established by, among other things, the facts set forth herein and by the fact that Defendants, to this day, have neither sought, nor obtained, a license from Plaintiffs.

**<u>AS AND FOR A FIRST CAUSE OF ACTION</u>**
**(Copyright Infringement – 17 U.S.C. § 101, *et seq.*)**

56. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs 1 through 55 as though fully set forth herein.

57. Plaintiffs became entitled to copyright protection with respect to the Work before *In Ha Mood* was first created or published.

58. After Plaintiffs' copyright protection with respect to the Work arose or came into existence, Defendants had access to the Work by virtue of the publication, public performances, radio airplay, and other usage and distribution of the Work.

59. Upon information and belief, Defendants also had access to the Work through the more direct and personal connections of Riot, DJ Enuff, and others.

60. The striking similarity between the Work and *In Ha Mood* are such that *In Ha Mood* could not have been created without access to the Work, and Defendants' access to the Work may be further established on that basis.

61. Defendants infringed upon Plaintiffs' copyright protection with respect to the Work when they copied substantial parts of the Work in creating *In Ha Mood*.

62. Defendants never received permission, authorization, consent, or even a license from Plaintiffs to interpolate, sample, use, or copy the Work, in whole or in part.

63. All of the elements of the Work, and the creative selection and combination of those elements, are original.

64. Since copying the Work in creating *In Ha Mood*, Defendants' reproduction, distribution, public performance, use, and other commercial exploitation of *In Ha Mood* has been regular, routine, and continuous.

65. Defendants have not compensated Plaintiffs for using the Work even though they received money and other substantial benefits from doing so during the period between January 6, 2023 (when Defendants first published *In Ha Mood*) and the present.

66. During the relevant time period, Defendants, and each of them, engaged in the unauthorized creation, reproduction, distribution, public performance, streaming, broadcasting, licensing, display, use, and/or other commercial exploitation of *In Ha Mood*, which infringes Plaintiffs' exclusive rights to the Work under the Copyright Act (both pre-registration and post-registration).

67. During the relevant time period, Defendants, and each of them, made copies of *In Ha Mood* and sold, reproduced, distributed, publicly performed, streamed, broadcasted, licensed, displayed, used, and/or otherwise commercial exploited *In Ha Mood* without Plaintiffs' consent.

68. During the relevant time period, Defendants, and each of them, with knowledge of the infringement at issue, took material steps to copy the Work to create and subsequently use and monetize *In Ha Mood*. In doing so, Defendants contributed to one another's infringement by assisting in the obtainment and copying of material portions of the Work.

69. During the relevant time period, Defendants, and each of them, financially benefited from the known infringement at issue and had the ability to supervise, oversee, and control the infringing conduct that gave rise to the creation and subsequent use and monetization of *In Ha Mood*.

70. During the relevant time period, Defendants further infringed upon Plaintiffs' copyright protection when they issued and/or authorized others to issue licenses to third parties for the use, publication, and exploitation of *In Ha Mood* or established royalty splits with third parties or co-Defendants not entitled to illegal revenues generated by *In Ha Mood*. These licenses and

agreements were issued without any consent, authority, or approval from Plaintiffs.

71. Defendants' conduct in infringing upon the Work has, at all times, been knowing and willful and with disregard to Plaintiffs' rights.

72. It is particularly clear that Defendants' conduct since the date of the Pre-Suit Notice and Demand sent on July 10, 2023, constitutes knowing and willful infringement of Plaintiffs' copyright protection.

73. As a direct and/or proximate cause of Defendants' wrongful conduct during the relevant time period, Plaintiffs have been and continue to be harmed, and they have suffered and continue to suffer actual damages in the form of, *inter alia*, lost licenses, revenues, royalties, and profits, lost goodwill, and a diminution in the value of the Work in an amount to be determined at trial, but, in no event, less than $1,000,000. Alternatively, with respect to each of Defendants' acts infringement upon Plaintiffs' copyright protection, Plaintiffs may elect to recover statutory damages and hereby reserve the right to do so any at any time before final judgment is rendered in accordance with 17 U.S.C. § 504(c).

**<u>AS AND FOR A SECOND CAUSE OF ACTION</u>**
**(Vicarious/Contributory Copyright Infringement)**

86. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs 1 through 55 as though fully set forth herein.

87. The reproduction, distribution, and creation of derivative works from *In That Mood* constitutes the direct infringement of *In That Mood* and Plaintiffs' copyright protection.

88. To the extent any of the Defendants was not personally and directly involved in infringing conduct, all such Defendants are nonetheless liable to Plaintiffs for vicarious or contributory copyright infringement because, during the relevant time period:

a. all such Defendants had actual or constructive knowledge of the infringing conduct and materially contributed to that infringing conduct by encouragement and assistance;

b. all such Defendants had the right and ability to supervise the activities of those engaged in the infringement, including, without limitation, through recording contracts, composition service contracts, distribution contracts, publishing contracts, license agreements, and/or other relevant agreements;

c. all such Defendants failed to exercise their right and/or ability to remedy, stop, or limit the infringing conduct, and, instead, induced, caused, or materially contributed to the infringing conduct;

d. all such Defendants derived an obvious and direct financial benefit from the infringement and exploitation of Plaintiffs' copyrighted work, including without limitation, through revenue sharing and/or royalty payments.

89. The acts of infringement, as described herein, were and continue to be willful, in disregard of, and with indifference to, the rights of Plaintiffs.

90. It is particularly clear that all Defendants knew or should have known of the infringing activity at least since the date of the Pre-Suit Notice and Demand sent on July 10, 2023.

91. As a result of Defendants' acts or omissions as set forth herein, Plaintiffs have suffered and continue to suffer substantial damages to their business including, without limitation, diversion of trade, loss of profits, injury to goodwill and reputation, and the dilution of the value of their rights, none of which may be fully ascertained at this time.

92. Defendants have also unlawfully profited from their infringement, constituting actual damages in an amount to be determined at trial.

93. Accordingly, to the extent any of the Defendants was not personally and directly involved in infringing conduct, all such Defendants are nevertheless liable to Plaintiffs for vicarious or contributory copyright infringement in an amount to be determined at trial, but, in no event, less than $1,000,000.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Declaratory Judgment)**

95. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs 1 through 55 as though fully set forth herein.

96. Plaintiffs are the authors and copyright owners for the Work and, given the nature and extent of Defendants' infringement, Plaintiffs are entitled to no less than fifty percent (50%) of the publishing and other revenues derived from *In Ha Mood*.

97. An actual, substantial, and continuing controversy exists between Plaintiffs and Defendants given the acts and omissions set forth above, including, without limitation, Defendants' continuing failure and refusal to recognize Plaintiffs' entitlement to no less than fifty percent (50%) of the publishing and other revenues derived from *In Ha Mood.*

98. Plaintiffs face a definite threat of future injury as Defendants continue their infringement with respect to the Work in violation of Plaintiffs' legal interests and without compensating Plaintiffs appropriately.

99. Plaintiffs and Defendants have adverse legal interests, and there is sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

100. Plaintiffs are entitled to a judicial declaration of their rights and other legal relations pursuant to, *inter alia*, 28 U.S.C. § 2201(a).

**WHEREFORE**, Plaintiffs respectfully request that judgment be entered against Defendants as follows:

a. On the First Cause of Action, awarding Plaintiffs injunctive relief and/or damages in an amount to be determined at trial;

b. On the Second Cause of Action, awarding Plaintiffs injunctive relief and/or damages in an amount to be determined at trial;

c. On the Third Cause of Action, declaring that, given the nature and extent of Defendants' infringement with respect to the Work, Plaintiffs are entitled to no less than fifty percent (50%) of the publishing and other revenues derived from *In Ha Mood*;

d. Awarding Plaintiffs an accounting, punitive damages, pre-judgment and post-judgment interest, attorneys' fees, costs, expenses, and disbursements; and

e. Awarding Plaintiffs such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

Dated: New York, New York
March 28, 2024

Respectfully submitted,

McLAUGHLIN & STERN, LLP

By: [signature]

Chester R. Ostrowski, Esq.
260 Madison Avenue
New York, New York 10016
Tel.: (212) 448-1100
costrowski@mclaughlinstern.com

*Attorneys for Plaintiffs Duval Chamberlain a/k/a D.Chamberz and Kenley Carmenate a/k/a Kass the Producer*